**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Laura Polino and Grace Park, individually and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>TOMY International, Inc.<br><br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Laura Polino and Grace Park (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant TOMY International, Inc. ("TOMY" or "Defendant")[1] and alleges the following based on personal knowledge as to themselves, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**NATURE OF THE ACTION**

1. This is a proposed class action arising from the dangerous design and prolonged concealment of a known defect in the Boon PIVOT Collapsible Toddler Tower ("Toddler Towers," "Product," or "Products")[2]. Specifically, Defendant designed, manufactured, marketed,

---

[1] Plaintiffs reserve the right to amend the complaint to include any additional responsible parties or entities as the evidence or information may arise throughout discovery.

[2] The Recall affects substantially similar Collapsible Toddler Towers marketed under the Boon PIVOT brand with SKU numbers B11437, B11437A1, B11437A2, B11578, B11578A, B1157A1, and B11578ME*See,* TOMY Recall Notice, available at https://recall.tomy.com/pivot (last accessed July 24, 2026)

1

distributed, and sold Toddler Towers with a uniform defect that causes them to tip over during ordinary, foreseeable use, posing a serious risk of injury to young children ("Defect").[3]

2.      TOMY is aware of 11 reports involving the towers being unstable and shifting or leaning.

3.      On July 16, 2026, the Consumer Product Safety Commission ("CPSC"), together with TOMY, announced the recall ("Recall") of approximately 116,000 Toddler Towers. These Toddler Towers were sold nationwide for approximately $150.00 each between January 2023 and June 2026.[4]

4.      Per the Recall Notice, customers were instructed first to identify if their Toddler Tower was affected by the Recall and then to "[c]ontact TOMY for a stabilizing repair part and installation instructions."[5]

5.      The repair kit requires consumers to attach two weighted stabilizers to the bottom rung of the Toddler Tower, using a Phillips Screwdriver, which is not included in the repair kit.[6] Consumers are instructed to "ensure that they repair kit is not loose and installed properly," but TOMY provides no guidance to consumers as to *how* to ensure that the product is "installed properly."[7]

6.      According to a report first published on September 4, 2025 by Consumer Reports, there have been "numerous" injuries reported from falls and entrapment related to toddler towers

---

[3] *See*, CPSC recall press release, https://www.cpsc.gov/Recalls/2026/TOMY-Recalls-Boon-PIVOT-Collapsible-Toddler-Tower-Kitchen-Step-Stools-Due-to-Risk-of-Serious-Injury-and-Death-from-Tip-Over-and-Fall-Hazards (last accessed July 24, 2026). *See also,* Yahoo! News – *More than 116,000 Boon toddler tower stools recalled over tip-over, fall hazards* (published on July 19, 2026), https://www.yahoo.com/news/us/articles/more-116-000-boon-toddler-025700586.html (last accessed July 24, 2026).
[4] *See,* CPSC recall press release, n. 3, *supra.*
[5] *Id.*
[6] *See* https://recall.tomy.com/en/pivot/images/Pivot-Repair-Kit-Instructions_260622.pdf (last accessed July 24, 2026).
[7] *Id.*

like the ones TOMY manufactured.[8] These reports describe "significant falls, slips, tip-overs, split wood, loose screws, and children's heads or limbs getting stuck in gaps between parts."[9] Consumer Reports evaluated sixteen different toddler towers for risks of tipping over and entrapment and found that TOMY's product failed both tests.[10] Consumer Reports stated that it contacted TOMY along with other manufacturers about the risks associated with its products, but that TOMY did not respond.[11]

7. On April 23, 2026, the CPSC announced the recall of the three toddler towers with designs similar to TOMY's Product "following dozens of safety incidents and multiple injuries."[12]

8. The Recall fails to offer ***any monetary relief*** to Plaintiffs and Class Members who purchased the defective Toddler Towers.

9. Defendant knew or should have known of these incidents, yet it did nothing.

10. TOMY is one of the world's leading manufacturers of children's toys and furniture.

11. As an example, the following are statements made by TOMY on its website in support of its leading market position:

> We offer a wide range of innovative, high-quality toys and nursery products that kids love and parents ask for by name. We never take for granted the role our products play in the lives of children and families. We want to earn your trust and loyalty by manufacturing high quality products that deliver safety, value, and a little TOMY magic.[13]

---

[8] *See* Consumer Reports*, Almost All the Toddler Towers We Tested Raised Safety Concerns. Here's Why.* (published September 4, 2025, updated July 16, 2026), https://www.consumerreports.org/babies-kids/child-safety/toddler-towers-safety-standards-a4009948838/?msockid=31c956c9157d65d92278415414a06499 (last accessed July 24, 2026).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *See* Consumer Reports, *Over 12,000 Toddler Towers Have Been Recalled After Dozens of Reports of Injuries, Tipping, Slips, and Collapses*, (published April 29, 2026), available at https://www.consumerreports.org/babies-kids/baby-product-recalls/toddler-towers-recalled-injuries-tipping-slips-collapses-a7298145630/?msockid=31c956c9157d65d92278415414a06499 (last accessed July 27, 2026).

[13] *See https://us.tomy.com/about-tomy/* (last accessed July 24, 2026)

12.     TOMY also advertises that the Toddler Tower is "Engineered for Safety," saying that its "Non-slip feet help tower stand steady and keep it in place during use" and that it is "Safety tested and complies with all US regulations."[14]



13.     While TOMY advertises that its Toddler Tower is "safety tested" and "complies with all US regulations, the Consumer Reports article states that there are ***no category-specific rules or safety standards for toddler towers***.

14.     As of the time of filing, the product's sales page does ***not even bother to disclose the recall***.

15.     The Defect existed at the point of purchase.

16.     When purchasing the Products, Plaintiffs and Class Members trusted Defendant and its representations that the Toddler Towers would be safe to use as intended.

17.     Had Plaintiffs and Class Members known about the Defect, they would not have purchased the Toddler Towers or paid less.

18.     Defendant's Recall is inadequate and fails to provide any monetary relief to purchasers.

---

[14] *See* *https://booninc.com/pivot-toddler-tower/* (last accessed July 24, 2026)

19. Even after announcing the Recall, Defendant has failed to offer consumers a refund, replacement product, reimbursement for labor, or any compensation for the diminished value of the recalled Products. Instead, Defendant requires consumers to perform the repair themselves, using tools they must obtain independently.

20. This action seeks to hold Defendant accountable for its conscious decision to use a dangerous design, conceal the known hazard associated with the Defect, and its insufficient recall remedy.

## PARTIES

### Plaintiff Laura Polino

21. At all relevant times, Plaintiff Laura Polino was and is a resident and citizen of Buffalo, New York, who purchased the Toddler Tower on August 18, 2025 through Amazon.com for $86.69. Plaintiff was unaware of the serious tip-over risks associated with the Toddler Tower at the time of purchase.

22. At the point of purchase, Plaintiff Polino read and reasonably relied on Defendant's representations that the Toddler Tower was safe to use for her and her family.

23. Plaintiff Laura Polino would not have purchased or used the Toddler Tower if she had known about the Defect and that it was unsafe to use.

24. Plaintiff Laura Polino is aware of the Recall. She has provided proof of purchase and photographs confirming that the Toddler Tower she purchased is one of the recalled Products. *See* Ex. 1.

### Plaintiff Grace Park

25. At all relevant times, Plaintiff Grace Park was and is a resident and citizen of Irvine, California, who purchased the Toddler Tower on February 25, 2024 through Amazon.com for $115.99. Plaintiff Park was unaware of the serious tip over risks associated with the Toddler Tower at the time of purchase.

26. At the point of purchase, Plaintiff read and reasonably relied on Defendant's representations that the Toddler Tower was safe to use for her and her family.

27. Plaintiff Grace Park would not have purchased or used the Toddler Tower if she had known about the Defect and that it was unsafe to use.

28. Plaintiff Grace Park is aware of the Recall. She has provided proof of purchase and photographs confirming that the Toddler Tower she purchased is one of the recalled Products. *See* Ex. 2.

***Defendant TOMY International, Inc.***

29. Defendant TOMY International, Inc. is a Delaware corporation headquartered in Oak Brook, Illinois. According to information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale, and distribution of the recalled Products.

30. Upon belief or information Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold the recalled Products online through Target.com, Amazon.com, and Babylist.com.

## JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

32. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

33. Under 28 U.S.C. § 1391, venue is proper in this District because Defendant is headquartered in this District. Because Defendant's principal place of business is in this District, venue is proper.

## COMMON FACTUAL ALLEGATIONS

34.     Defendant TOMY International "manufactur[es] high quality products that deliver safety, value and a little TOMY magic."[15] Boon Brands is a subsidiary of TOMY International and describes itself as "a leading global designer, producer, and marketer of a broad range of innovative, high-quality toys as well as nursery products children's toys and nursery products."[16]

35.     TOMY sold the Toddler Towers online through Target.com, Amazon.com and Babylist.com from January 2023 through June 2026 for around $150.[17]

36.     The Toddler Towers can tip over while in use, posing a risk of serious injury and death due to tip over and fall hazards.[18]

37.     The CPSC announced a nationwide recall of the Toddler Tower on July 16, 2026, affecting more than 116,000 products.[19]

38.      TOMY is aware of 11 reports involving the towers being unstable, shifting, or leaning.[20]

39.     Despite having the capability and expertise to mitigate the risk, TOMY failed to redesign the product or issue sufficient consumer warnings.

40.     TOMY also advertises that the Toddler Tower is "Engineered for Safety," saying that its "Non-slip feet help tower stand steady and keep it in place during use" and that it is "Safety tested and complies with all US regulations."[21]

41.     As of the time of filing, the product's sales page does ***not even bother to disclose the recall***.[22]

---

[15] *See* https://us.tomy.com/about-tomy/ (last accessed July 24, 2026).
[16] *See*  https://booninc.com/about/ (last accessed July 24, 2026).
[17] CPSC recall press release, n. 3, *supra.*
[18] *See id.*
[19] *See id.*
[20] *See id.*
[21] *See* *https://booninc.com/pivot-toddler-tower/* (last accessed July 24, 2025)
[22] *See id.*

42. The CPSC recall remedy is a free "repair kit" which requires consumers to attach two weighted stabilizers to the bottom rung of the Toddler Tower, using a Phillips Screwdriver, which is not included in the repair kit.[23]

43. The Recall is dangerously deficient, both because of the unreasonable delay in notifying consumers and because the offered repair kit is wholly inadequate.

44. Consumers are instructed to "ensure that the repair kit is not loose and installed properly," but no guidance is provided to consumers as to *how* to ensure that the product is "installed properly."[24] This places the burden of maintaining the Toddler Towers' usefulness entirely on consumers.

45. A CPSC study found that recall response rates drop significantly when consumers face cognitive or task overload or when the recall fails to provide sufficient incentives to participate.[25]

46. TOMY deliberately chose the most profitable approach to its business and the least harmful to its brand image, rather than a solution that would ensure the safety and durability of its Toddler Towers.

47. As a direct result of TOMY's conduct, Plaintiffs and the proposed class members suffered economic losses by purchasing the Toddler Towers at a price premium. Had Plaintiffs and Class Members known the truth about Defendant's mislabeled and defective Products, they would not have purchased them or paid less for them.

---

[23] *See* https://recall.tomy.com/en/pivot/images/Pivot-Repair-Kit-Instructions_260622.pdf (last accessed July 24, 2026).

[24] *Id.*

[25] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 26 (last accessed March 26, 2026).

48. TOMY expressly warranted, through its Owner's Manuals and advertising, that the Toddler Towers were fit for their ordinary and intended use.

49. The Toddler Towers are also covered by the implied warranty of merchantability, which ensures that goods sold by a merchant are fit for their ordinary purpose.

50. TOMY clearly intended its warranties to benefit consumers who rely on the company for safe, durable Toddler Towers.

51. Despite these warranties, the Toddler Towers contain a uniform Defect that existed before and at the time of sale, causing them to fail in their fundamental purpose.

52. TOMY knew or should have known about the Defect and the dangers it posed before and at the time the Toddler Towers were sold.

53. Plaintiffs and Class Members, by contrast, had no way of discovering the Defect or the risks associated with it prior to purchase.

54. TOMY knew, or should have known, of the Defect at the time of sale based on the Toddler Towers' design, industry safety guidance, and the Consumer Reports publication.

55. TOMY was in a far superior position to identify, address, and disclose the Defect, whereas Plaintiffs and Class Members had no ability to detect it at the time of purchase.

56. This disparity in bargaining power prevented Plaintiffs and Class Members from receiving the benefit of the warranties.

57. The inequity was compounded by the fact that TOMY knew of the Defect, while Plaintiffs and Class Members had no notice of it and no reason to suspect it, given TOMY's marketing of the Toddler Towers.

58. TOMY abused the trust it fostered with consumers by promoting, designing, manufacturing, and selling the Toddler Towers as safe and durable products, leaving Plaintiffs and

9

Class Members with no meaningful choice but to rely on TOMY's representations and accept its warranty terms.

59.     TOMY knew Plaintiffs and Class Members lacked the ability to detect the Defect and that they would ultimately bear the cost of repairing or replacing the defective Toddler Towers.

60.     TOMY was aware of the Defect at the time of sale, while Plaintiffs and Class Members were not and could not have reasonably discovered it.

61.     Because the Toddler Towers were defective when they left the assembly line, TOMY was already in breach of its warranties at the moment Plaintiffs and Class Members purchased them.

62.     TOMY sold the Toddler Towers knowing they could not be repaired or replaced with a non-defective product.

63.     Had Plaintiffs and Class Members known of the Defect, they would have negotiated different terms or declined to purchase the Toddler Towers altogether.

64.     TOMY sold the Toddler Towers with full knowledge that they did not conform to its safety-based marketing claims and were not safe or suitable for their intended and foreseeable use.

65.     The terms of the warranties unreasonably favor TOMY at the expense of Plaintiffs and Class Members.

66.     The warranties failed in their essential purpose because (1) the Defect existed when the Toddler Towers left the manufacturing facility; and (2) TOMY failed to disclose the Defect at any point, including when contacted by customers regarding the Toddler Towers.

67.     Accordingly, Plaintiffs and Class Members are not limited to the remedies stated in the express warranties and seek all remedies that may be allowed.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

68.     Defendant has continuously marketed and sold the dangerous Products to unsuspecting customers. It continuously represented that the Products are safe and suitable for use.

69.     Defendant affirmatively concealed the existence and scope of the Defect while continuing to market the Products as safe. Plaintiffs and Class Members had no reasonable means of discovering the concealed Defect prior to the Recall because the relevant information was exclusively within Defendant's possession.

70.     Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Products, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiffs and other Class Members' claims are not time-barred.

71.     Moreover, even after the Recall, there is no evidence that news of the Recall Notice reached all Product owners.

72.     Plaintiffs and other Class members could not have reasonably discovered and could not have known facts that would have caused a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about a dangerous defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations should apply.

73.     Throughout the time period relevant to this action, Defendant concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Defect described herein.

74.     Defendant kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

75.     Defendant had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Product, that the Product has a uniform dangerous Defect, and that it poses safety concerns and is in fact dangerous.

76.     Instead, Defendant continued to market the Product as suitable for its intended purpose to further profit from the sale of its popular Product and prevent Plaintiffs and other Class members from seeking redress.

77.     Plaintiffs and the other Class Members justifiably relied on Defendant to disclose the true dangerous nature of the Product they purchased and/or owned because that Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

78.     Defendant's affirmative acts of concealment, including its continued marketing of the Defective Product as safe, reliable, and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action on behalf of themselves and the following Classes under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

**Nationwide Class:** All persons in the United States who purchased the Product for personal use and not for resale during the fullest period provided by law.

and

**New York Sub-Class:** All persons in New York who purchased the Product for personal use and not for resale during the fullest period provided by law.

and

**California Sub-Class:** All persons in California who purchased the Product for personal use and not for resale during the fullest period provided by law.

80.     Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Defendant.

81. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

82. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

83. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether the Product contained the Defect alleged herein;

    b. Whether Defendant knew or should have known of the Defect;

    c. Whether Defendant had to disclose the Defect to consumers;

    d. Whether Defendant's representations and omissions were misleading or deceptive;

    e. Whether Defendant's conduct was unfair or illegal;

    f. Whether Class Members suffered economic injury;

    g. Whether Defendant's conduct violates public policy;

    h. Whether Defendant's conduct violates the consumer protection statutes alleged herein;

i.   Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

j.   Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Product; and

k.   Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief;

84.   **Typicality.** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Product, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiffs share the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiffs and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiffs and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive omissions concerning the Product's safety and its ability, as well as the proposed repair remedy's ability, to function as intended.

85.   **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs have retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs have no conflicts of interest or interests adverse to those of the putative Class.

86.   **Insufficiency of Separate Actions**. Absent a class action, Plaintiffs and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of

lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

87. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiffs and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

64. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual

members of the Class, which would establish incompatible standards of conduct for Defendant; and

b.    Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT/QUASI-CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class, or alternatively, the New York and California Subclasses)**

65.    Plaintiffs hereby repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

66.    Plaintiffs bring this Count on behalf of themselves and the Nationwide Class, or alternatively, the New York and California Subclasses (the "Class"). .

67.    Plaintiffs and the putative Class Members conferred a benefit on Defendant by purchasing the Product—payments that Defendant knowingly accepted while aware of the product's defect and unfitness for its intended use.

68.    Defendant either knew or should have known that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Product would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

69. By its wrongful acts and omissions described herein, including selling the Product, which contained both a Defect and was inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

70. Defendant's wrongful conduct directly caused Plaintiffs' detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

71. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiffs and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Product, as such enrichment was directly tied to the misconduct alleged herein.

72. Defendant was unjustly enriched by retaining revenues from Class Members' purchases of the Product. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Product while omitting material facts, causing Plaintiffs and Class Members to purchase products they otherwise would not have bought had the truth been disclosed.

73. Defendant's conduct allows it to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiffs and Class Members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity, and good conscience principles.

74. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

75.     Plaintiffs and Members of the Classes seek disgorgement of all profits resulting from such overpayment.

## COUNT II
## BREACH OF IMPLIED WARRANTIES
**(On Behalf of Plaintiffs and the Nationwide Class, or alternatively, the New York and California Subclasses))**

76.     Plaintiffs hereby repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

77.     Plaintiffs bring this Count on behalf of themselves and the proposed Nationwide Class, or alternatively, the New York and California Subclasses ("Class").

78.     Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Product.

79.     The Product was and is, at all relevant times, a "good" within the relevant laws.

80.     Defendant knew or had reason to know of the specific use for which the Product, as goods, was purchased.

81.     Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Product to be used by Plaintiffs and the proposed Class Members.

82.     Defendant provided Plaintiffs and the proposed Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which the Product was used and sold and was not otherwise injurious to consumers, that the Product would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiffs and Class Members.

18

83.     Defendant breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of being a reasonably safe structure for a young child to use. The Product contains the Defect, rendering the Product unsafe to use as intended. Therefore, the Product is not fit for its particular purpose.

84.     As instructed by the Recall Notice, Plaintiff is forced to completely discontinue use of the Product due to the ongoing safety risk of the Product tipping over.

85.     The aforementioned problems associated with the Product constitute safety risks, such that the Product is neither safe nor suitable for children to use. Therefore, there is a breach of the implied warranty of merchantability.

86.     Moreover, due to the inadequate and overdue nature of the Recall, it is not required and would be futile for Plaintiffs to provide Defendant further opportunity to cure their breach.

87.     Plaintiffs and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiffs and each Class Member, on the other hand.

88.     Nevertheless, privity is not required because Plaintiffs and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Product. Thus, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Product and its warranties.

89.     Defendant impliedly warranted that the Product was safe, suitable for children to use, of merchantable quality, and fit for their intended purpose. These implied warranties included,

among other things: (i) a warranty that the Product manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to safely support young children during ordinary use; (ii) a warranty that the Product would be fit for its intended use while the Product is being used; and (iii) a warranty that the Product would conform to all of the promises and affirmations of fact on the Product's label and online advertising.

90. Instead, the Product contains a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Product fails to conform to the promises or affirmations of fact on its label and online advertising.

91. Defendant failed to adequately warn Plaintiffs and Class Members that the Product contained the Defect, was not safe or suitable for use, and could and have caused children to tip over, causing serious injuries.

92. Defendant breached the implied warranties because the Product was and is sold with the Defect.

93. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

94. Plaintiffs and Class Members had no meaningful choice in determining the terms of that unreasonably favored Defendant, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Product. A gross disparity in bargaining power existed between Defendant and Plaintiffs and the Class Members, and Defendant knew or should have known that the Product was defective at the time of sale.

95. Contrary to the applicable implied warranties, the Product, at the time of sale and thereafter, was not fit for its ordinary and intended purpose. Instead, the Product suffered, and continues to suffer, from the Defect as alleged herein.

96.     Defendant's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

97.     As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III
### VIOLATION OF NEW YORK DECEPTIVE ACTS AND PRACTICES LAW
### New York General Business Law § 349
### (By Plaintiff Polino, individually, and on behalf of the New York Sub-class)

98.     Plaintiff Polino hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

99.     Plaintiff Polino brings this claim individually, and on behalf of the New York Sub-Class against Defendant.

100.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

101.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Polino and the New York Sub-class Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

102.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

103.    Defendant's improper consumer-oriented conduct including omitting and failing to disclose that the Defects is misleading in a material way in that it, inter alia, induced Plaintiff Polino and the New York Subclass to purchase Defendant's Products and to use them when they otherwise

would not have. Defendant made these untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

104. Plaintiff Polino and the New York Subclass have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff Polino and the New York Subclass received less than what they bargained and paid for.

105. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiff Polino and the New York Sub-class have been damaged thereby.

106. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Polino and the New York Sub-class are entitled to monetary, statutory, compensatory, and treble damages, interest, and attorneys' fees and costs.

107. This defect was present in all Products at the time of sale, regardless of whether a consumer has yet experienced a failure or injury.

**COUNT IV**
**VIOLATION OF NEW YORK FALSE ADVERTISING LAW**
**New York General Business Law § 350**
**(By Plaintiff Polino, individually, and on behalf of the New York Subclass)**

108. Plaintiff Polino hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

109. Plaintiff Polino brings this claim individually, and on behalf of the New York Sub-Class against Defendant.

110. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

111. N.Y. Gen. Bus. Law § 350a (1) provides, in part, as follows: The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of

any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

112. Defendant's advertising and marketing of the Products was misleading in a material respect. Defendant represented that the Products were safe and effective for household use, while failing to disclose the Defect.

113. Plaintiff Polino and the New York Sub-class have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that were mislabeled and entirely worthless. Accordingly, Plaintiff and the New York Subclass received less than what they bargained and paid for.

114. Defendant's advertising, packaging, and Products' labeling induced Plaintiff Polino and the New York Sub-class to buy Defendant's Products.

115. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

116. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

117. Defendant made the material omissions described in this Complaint in its advertising and on the Products' packaging and labeling.

118. Defendant's material omissions impacted consumers at large. Moreover, all consumers who purchased the Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass are entitled to monetary, statutory, compensatory, and treble damages, interest, and attorneys' fees and costs.

119. This Defect was present in all Products at the time of sale, regardless of whether a consumer has yet experienced a failure or injury.

## COUNT V
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code §§17500 *et seq.*
### (Plaintiff Park on behalf of herself and the California Sub-Class)

120. Plaintiff Park hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

121. Plaintiff Park brings this claim individually, and on behalf of the California Sub-Class against Defendant.

122. Defendant has violated Section 17500 of the Business and Professions Code.

123. As alleged more fully above, Defendant has made and disseminated false and misleading statements of fact in its advertisements to Plaintiff and members of the California Sub-Class regarding its sale of the Product.

124. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

125. Defendant's misrepresentations were intended to induce reliance, and Plaintiff Park reasonably relied on the statements when making purchasing decisions. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decisions.

126. Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the cost of the Products.

127. Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff Park and members of the California Sub-Class.

128. Plaintiff Park and members of the California Sub-Class were injured as a direct and proximate result of Defendant's conduct.

129. Plaintiff and the members of the California Sub-Class were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the Product if they had known the truth, and/or they overpaid for the Products because the products were sold at a price premium due to the misrepresentations.

## COUNT VI
### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), Cal. Civ. Code § 1750 *et seq.*
### (Plaintiff Park on behalf of herself and the California Subclass

130. Plaintiff Park hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

131. Plaintiff Park brings this claim individually, and on behalf of the California Sub-Class against Defendant.

132. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

133. Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

134. Plaintiff Park and members of the California Sub-Class are "consumers" as defined in Cal. Civ. Code § 1761(d).

135. The Products that Plaintiff Park and members of the Class and California Sub-Class purchased are "goods" as defined in Cal. Civ. Code § 1761(a).

136. Purchases made by Plaintiff Park and members of the California Sub-Class constitute "transactions" as defined by Cal. Civ. Code § 1761(e).

137. Defendant represented to Plaintiff Park and the California Sub-Class that they were buying Products that were safe and fit for their ordinary purposes and in doing so violated Cal. Civ. Code § 1770(a)(5) (representing that goods or services have characteristics, uses, benefits, or qualities that they do not have).

138. Defendant's practice of misrepresenting, actively concealing, and/or failing to disclose the true nature of Products was and continues to violate the CLRA.

139. Defendant's misrepresentations were likely to deceive Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements and representations were inaccurate and misleading.

140. Defendant's misrepresentations were intended to induce reliance, and Plaintiff Park reasonably relied on them when making her purchasing decisions. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decisions.

141. Defendant's deceptive practices significantly impacted Plaintiff and the members of the California Sub-Class. The misleading information presented, and the omissions made, were material, meaning a reasonable person would consider them and be impacted by them heavily when deciding whether to purchase the Products from Defendant. This false information and omissions directly caused financial harm.

142. Class-wide reliance can be inferred because Defendant's misrepresentations were material in that a reasonable consumer would consider them important when deciding whether to make a purchase.

143. Plaintiff Park and members of the California Sub-Class were injured as a direct and proximate result of Defendant's conduct, and Plaintiff Park and members of the California Sub-Class suffered ascertainable loss caused by Defendant's conduct, as outlined herein.

144. Contemporaneous with the filing of this Complaint, Plaintiffs, through counsel, will provide notice to Defendant pursuant to Cal. Civ. Code § 1782(a) via certified mail. As the 30-day response period has not yet lapsed, Plaintiff claims no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive damages under the CLRA. At this time, Plaintiff seeks only injunctive or other equitable relief under the CLRA as described above.

## COUNT VII
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
Cal. Bus. & Prof. Code § 17200 *et seq.*
(Plaintiff Park on behalf of herself and the California Sub- Class)

145. Plaintiff Park hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

146. Plaintiff Park brings this claim individually, and on behalf of the California Sub-Class against Defendant.

147. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

148. With respect to "unfair" practices, in the consumer context, courts "generally continu[e] to apply a broad[] standard . . . encompassing business practices that 'offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (*quoting S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87, 85 Cal. Rptr. 2d 301 (1999)).

149. Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally disguising the true and unsafe nature of the Products.

150. Defendant also engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally misrepresenting to consumers that they were purchasing safe and effective goods.

151. Defendant's acts and practices have deceived Plaintiff Park and those similarly situated, and are likely to deceive the public. Plaintiff and members of the California Sub-Class all suffered financial injury due to Defendant's unfair and unlawful conduct in violation of the UCL.

152. The injuries suffered by Plaintiff Park and those similarly situated are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and those similarly situated should have reasonably avoided.

153. Defendant's acts and practices are unlawful because it claims to sell safe and effective products, when in reality the Defects cause harm to consumers, including Plaintiff. Plaintiff and those similarly situated have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

154. Plaintiff Park seeks to enjoin further unlawful and unfair acts or practices by Defendant under Cal. Bus. & Prof. Code § 17203.

155. Plaintiff Park, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and/or unlawful practices; to order Defendant to refund its consumers; to order Defendant to implement systems sufficient to fully inform consumers of the true nature of Products purchased and ensure Defendant complies with those disclosures; to restore, via restitution or disgorgement, any monies Defendant acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

   a.  Declare that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

   b.  Award Plaintiffs and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

   c.  Declare that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Product;

d.  Order Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

e.  Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect;

f.  Award pre-judgment and post-judgment interest as permitted by law;

g.  Order such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims so triable.

DATED: July 28, 2026

Respectfully submitted,

*/s/Kevin Laukaitis*
Kevin Laukaitis
Andreas Moffett
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com
amoffett@laukaitislaw.com

Mason A Barney
Leslie Pescia
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
Phone: (212) 532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*Attorneys for Plaintiffs & Putative Class Members*